```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SELENA TOMASELLO,
                    Plaintiff,               09-CV-0585

          v.                                 DECISION
                                             and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____
```

## **INTRODUCTION**

Plaintiff Selena Tomasello ("Plaintiff") brings this action pursuant to the Social Security Act (codified in relevant parts at 42 U.S.C. §§ 405(g) and 1383(c)(3)), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") J. Timothy McGuan denying her application for benefits was against the weight of substantial evidence contained in the record. Plaintiff requests that the Court reverse the judgment of the Commissioner and remand for calculation of benefits, or in the alternative, for further administrative proceedings.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision was supported by substantial evidence in the record and was based upon the application of the

- 1 -

correct legal standards. Plaintiff cross-moves for judgment on the pleadings and opposes the Commissioner's motion on the grounds that the Commissioner's decision was not supported by substantial evidence. For the reasons set forth below, I find that the Commissioner's decision was not supported by substantial evidence in the record. I hereby grant Plaintiff's motion and remand this claim to the Social Security Administration for further administrative proceedings consistent with this decision.

## BACKGROUND

On March 14, 2005, Plaintiff filed applications for disability insurance benefits, and supplemental security income. (Tr. 60). She alleged she was disabled due to Rheumatoid Arthritis which began June 15, 2004. (Tr. 60-65). These claims were initially denied on April 1, 2005. (Tr. 24-30). Thereafter, the Plaintiff timely filed a written request for a hearing on June 27, 2005. (Tr. 33). On November 7, 2006, the Plaintiff and her attorney appeared at a hearing held in Buffalo, NY. (Tr. 279-310). Dr. Timothy Janikowski, a vocational expert ("VE") was also present. Id. In a decision dated November 20, 2006, ALJ J. Timothy McGuan found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 11-23). The Appeals Council denied review on May 28, 2009, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). The Plaintiff subsequently filed this action on November 19, 2009.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. See Mathews v. Eldridge, 424 U.S. 319, 320 (1976). In addition, Section 405(g) directs that the District Court accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). Section 405(g) thus limits this Court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the

Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). "[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2005).

## II. **The ALJ's decision is erroneous because the ALJ did not follow the treating physician rule**

### A.  Standard for evaluating a Claimant's disability claim

In finding that the Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential analysis for evaluating applications and determining whether an individual is disabled. See 20 C.F.R. § 404.1520 and 416.920(a)(4)(i)-(v)(2009). Pursuant to the five-step analysis set forth in the regulations, the ALJ will

consider: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) whether the claimant can perform other work. See id. Under step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date. (Tr. 16). At steps two and three, the ALJ found that the Plaintiff's impairments, rheumatoid arthritis and osteoarthritis in her right knee, were severe within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (Tr. 16-17). At step four, the ALJ determined that the Plaintiff had the residual functional capacity to perform light work. (Tr. 17).  The ALJ also determined that Plaintiff must have a sit/stand option and therefore could not perform her past relevant work as a cafeteria worker.  (Tr. 21). At step five of the analysis, the ALJ used the Medical-Vocational Rules found in 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Rules") to direct a finding of not disabled. (Tr. 27). Specifically, the ALJ stated that "considering the claimant's age, education, work experience, and residual functional

capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 28).

**B.   The ALJ failed to properly apply the treating physician rule**

Plaintiff contends that the ALJ's decision failed to provide good reason for discounting the weight afforded to her two treating physicians.  A treating physician's opinion is given controlling weight where it is well-supported by the medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 416.927 (d)(2), 416.1527 (d)(2). The opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history. Id. When determining whether to give a physician's opinion controlling weight, the ALJ must consider (1) whether there is a treatment relationship between the physician and the claimant; (2) the length and nature of the treatment relationship; (3) the consistency of the opinion with other medical and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) other evidence that supports or contradicts the treating physician's opinion. 20 C.F.R. §§ 416.927(d)(3)-(6), 416.1527 (d) (3)-(6).  When these factors establish that the treating physician's opinion is entitled

to controlling weight, the ALJ must adopt the opinion of the treating physician regardless of the findings he or she could have made in the absence of the treating physician's opinion. S.S.R. 96-p (1996). While the ultimate decision of disability is reserved to the Commissioner, the ALJ should give controlling weight to the treating physician's opinion where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527 (d)(2); See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded. S.S.R. 96-2p (1996).

The above-listed factors should also be used to determine the weight given to a consultative physician's opinion. 20 C.F.R. § 404.1527 (d)(2). However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating physician's opinion will be given more weight than that of the consultative examining physician. See generally 20 C.F.R. §404.1527 (d). The "ALJ cannot arbitrarily substitute his or her own judgment for competent medical opinion." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). In addition, the failure of the ALJ to provide good reasons for discrediting the treating physician's

opinion constitutes legal error. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1993); See also, 20 C.F.R. § 404.1527(d)(2). Thus, the "treating physician's opinion [is] binding unless contradicted by substantial evidence, and even if contradicted, [is] entitled to extra weight." Schisler v. Sullivan, 3 F.3d 563, 565 (2d Cir. 1993); see also Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

Plaintiff received treatment from Dr. Jihad Abialmouna, a Rheumatologist. On April 30, 2004, Dr. Abialmouna examined Plaintiff and found some pain with motion over Plaintiff's elbows and fingers. (Tr. 205). He also noted right knee swelling and effusion and recommended X-rays of Plaintiff's hands and knees. Id. On September 20, 2004, Plaintiff returned for a follow-up appointment with Dr. Abialmouna. (Tr. 202). Dr. Abialmouna again noted effusion of the right knee, performed arthrocentesis and thereafter injected the knee with anti-inflammatories. Id.

On February 8, 2005 Plaintiff returned and Dr. Abialmouna found that Plaintiff exhibited "fairly good range of motion" in her upper extremities with tenderness over her joints and pain with palpation. (Tr. 200). Dr. Abialmouna noted a large effusion on Plaintiff's right knee area as well as pain with motion, and again performed arthrocentesis on the right knee. Id. On February 7, 2006, Dr. Abialmouna found that Plaintiff had "fair range of motion" in her lower extremities and noted a small effusion in Plaintiff's right knee with some pain associated with flexion and extension.

Id. Dr. Abialmouna recommended that Plaintiff continue taking her prescribed medications, continue to exercise on a regular basis and have another set of x-rays taken of her knees Id.

On October 31, 2006, Dr. Abialmouna signed a letter stating that Plaintiff's rheumatoid arthritis had been confirmed by laboratory testing. (Tr. 272). The letter stated that "[Plaintiff] is unable to perform any work requiring her to be on her feet for two hours out of an eight hour day, is unable to sit for more than a half-hour, and could not perform work requiring her to sit for six hours." Id. Additionally the letter stated that Plaintiff "is unable to walk a block at a reasonable pace on rough or uneven surfaces. Her ability to perform routine ambulatory activities is affected as a result." Id. A near-identical letter was issued by Dr. Pusatier, Plaintiff's general practitioner, the following day.[1] (Tr. 271).

The Plaintiff also received a consultative internal medical examination from Dr. John Schwab. (Tr. 206). Dr. Schwab observed a full range of motion in all of Plaintiff's examined joints and full strength (5/5) in Plaintiff's upper and lower extremities (Tr. 208). Plaintiff's joints were "stable and nontender" and no redness, heat, swelling or effusion was noted. Id. Dr. Schwab also notes that Plaintiff's hand and finger dexterity were intact and she

---

[1] It is unclear which of Plaintiff's treating physicians, Dr. Pusatier or Dr. Abialmouna, drafted the letter. However, as both physician's signed the letter, it appears that they had a similar assessment of the Plaintiff. See (Tr. 271-272).

possessed full grip strength (5/5), bilaterally. Id. Dr. Schwab also ordered x-rays of Plaintiff's right knee and foot, which revealed evidence of moderate osteoarthritis in the medial side of Plaintiff's right knee joint and a "normal right foot" (Tr. 21). Dr. Schwab diagnosed Plaintiff with arthritis of the knees, headaches and being status post uterine cancer. Id. Dr. Schwab's prognosis was "fair" and he found "no restrictions" based on his evaluation. Id.

On June 16, 2006, Charles J. Stock[2] performed a state agency review of Plaintiff's medical records and prepared a physical residual functional capacity ("RFC") assessment which is composed of check boxes and sections for explaining supportive evidence. (Tr. 211-216). Mr. Stock opined that Plaintiff could "occasionally lift and/or carry fifty pounds" and could "frequently lift and/or carry 25 pounds." (Tr. 212). He also opined that Plaintiff could stand or walk, "with normal breaks for a total of about 6 hours in a 8 hour workday", "sit, with normal breaks for a total of about 6 hours in an 8 hour workday," and had an unlimited ability to push and/or pull. Id. Mr. Stock found that Plaintiff had no other limitations and concluded that Plaintiff's claim of suffering pain of a severity of 10/10 "is not supported by the objective findings" (Tr. 214).

---

[2] The record does not state what medical qualifications, if any, Mr. Stock has (Tr. 216).

In his decision, the ALJ stated that he "discount[ed]" the opinions of the Plaintiff's treating physicians because

> "First, [the opinion] is not supported by the objective evidence that [Dr. Abialmouna] refers to, particularly the inability to sit for six hours in an eight-hour day. Second, [Plaintiff] complained of hand problems, but always referred to problems with standing, walking, climbing stairs and kneeling. Third, [Plaintiff] never mentioned problems with sitting and it would not be reasonable that she could not sit since being off of the knee should alleviate most pain or discomfort. Finally, in June 2005, [Plaintiff] told Dr. Pusatier that she could not work because she could not stand and was 'looking for a job where she can sit most of the time' thus contradicting Dr. Abialmouna's statement that she was unable sit for six hours per day since June 2004."  (Tr. 21).

Dr. Abialmouna and Dr. Pusatier stated that their opinions were consistent with objective medical findings.  (Tr. 271-72).

In this case, the ALJ McGuan did not reference the findings of the consultative examiner, Dr. Schwab, or those of Mr. Stock, when discounting the opinions of the Plaintiff's two treating physicians. (Tr. 21).  Additionally, the ALJ does not note the weight he affords to the consultative examiner's opinions.  (Tr. 17).

The ALJ, in his decision, stated, "claimant is able to effectively ambulate and manipulate, although at a reduced capacity." (Tr. 17).  However, the ALJ did not directly address the opinions of Plaintiff's treating physicians that she could not ambulate effectively. (Tr. 21, 271-272).  Instead the ALJ focused exclusively on Plaintiff's ability to sit for extended periods of

- 11 -

time and use her hands as an explanation of why he declined to afford controlling weight to the entire opinions of Dr. Pusatier and Dr. Abialmouna. Inconsistencies in the notes regarding Plaintiff's ability to sit or use her hands does not relate to Plaintiff's inability to ambulate. The ALJ was required to explain to Plaintiff in his decision why he declined to afford controlling weight Plaintiff's treating physicians that she could not ambulate effectively. See Schaal, 134 F.3d 496, 505 (2d Cir. 1993).

Plaintiff argues that if her treating physicians' opinions on her inability to ambulate effectively were given controlling weight, the severity of her arthritis would meet or medically equal Listing Section 14.09 "Inflammatory arthritis." (Plaintiff's Memorandum of Law "Pl. Mem." 10), See, 20 C.F.R part 404, subpart P, Appendix 1, Section 14.09.[3]

In discounting the weight afforded to these opinions regarding Plaintiff's inability to ambulate without providing specific reasons, the ALJ violated his duty to provide "good reasons" to Plaintiff for his unfavorable decision and therefore failed to comport with the requirements of the treating physician rule. This is not to say that the ALJ was not ultimately entitled to disagree with the opinions of Dr. Abialmouna and Dr. Pusatier, but rather that the ALJ failed to provide Plaintiff with clear, enumerated and

---

[3] For "Inflammatory Arthritis" to reach listings-level severity, it must consist of "persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in inability to ambulate effectively" 20 C.F.R. 404(P), Appendix 1, Part 114.09(a). "Examples of ineffective ambulation include, but are not limited to ... the inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. 404(P), Appendix 1, Part 1.00(B)(2)(b).

sufficient reasons for doing so. Further, if the ALJ believed the record was incomplete, based on the opinions of the plaintiff's treating physicians, it was his duty to fully develop the record. Becker v. Astrue, 2009 U.S. Dist. LEXIS 82694 at *12 (citing 20 C.F.R. § 404.1512(e)(1)).

Accordingly, because this court finds that the ALJ failed to properly apply the treating physician rule, this court remands this case to the Commissioner for further administrative proceedings.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision denying the Plaintiff disability benefits under SSI, violated the treating physician's rule. The ALJ's decision not to afford controlling weight to the opinions of Plaintiff's two treating physicians, regarding Plaintiff's inability to ambulate, was not supported by good reasons. Accordingly, both Defendant's and Plaintiff's motions for judgment on the pleadings are denied and this claim is remanded to the Commissioner for administrative proceedings consistent with the decision.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         June 23, 2011